Larry Zerner (SBN 155473)
Law Offices of Larry Zerner
1801 Century Park East, Ste. 2400
Los Angeles, CA 90067
(310) 773-3623
Email: Larry@ZernerLaw.com

Attorneys for Plaintiff Vinita Gupta

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINITA GUPTA,<br><br>            Plaintiff,<br><br>     vs.<br><br>ALEX SALKEVER, and DOES 1-10, Inclusive,<br><br>            Defendants | Case No.: 3:26-cv-698<br><br>COMPLAINT FOR<br><br>  1) DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND COPYRIGHT OWNERSHIP<br>  2) MISREPRESENTATION UNDER 17 U.S.C. 512(F)<br>  3) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE<br><br><u>DEMAND FOR JURY TRIAL</u><br>(F.R.C.P. Rule 38) |

Plaintiff Vinita Gupta brings this claim against Defendant Alex Salkever for a declaratory judgment of non-infringement regarding Plaintiff's book *The Woman in Deed* ("the Book") and for damages for Defendant's wrongful claims of infringement against Gupta.

## I. THE PARTIES

2.  Plaintiff Vinita Gupta is an individual living in Woodside, California, and is a successful technology entrepreneur.

3.  Upon information and belief, Defendant Alex Salkever is a writer living in Mill Valley, California.

4.  Plaintiff does not presently know the true names and capacities of the defendants named as Does 1 through 10 and therefore sues such defendants by these fictitious names. Plaintiff believes that the Doe Defendants are persons or entities who are involved in the acts set forth below, either as independent contractors, agents, or employees of the known defendants, or through entering into a conspiracy and agreement with the known Defendants to perform these acts, for financial gain and profit, in violation of Plaintiff's rights. Plaintiff will request leave of Court to amend this Complaint to set forth their true names, identities, and capacities when Plaintiff ascertains them. The Doe defendants and the known Defendants are referred to hereinafter collectively as "Defendants."

## JURISDICTION AND VENUE

9.  The present action arises under the Copyright Act, Title 17, Section 101, <u>et seq</u>., of the United States Code.

10. Jurisdiction is conferred on this Court by 28 U.S.C. §1338(a) and 28 U.S.C. §2201.

11.     Venue lies in the Northern District of California under 28 U.S.C § 1391(a) and (b) and 28 U.S.C. Section 1400(a).

FACTS COMMON TO CLAIMS OF RELIEF

12.     Vinita Gupta is a technology entrepreneur and the founder of Quick Eagle Networks (formerly Digital Link). She holds the distinction of being the first woman of Indian heritage to take her company public in the United States.

13.     In 2023, Gupta desired to write a non-fiction book recounting her life, career, and accomplishments which resulted in an autobiography. Because she did not have experience as a writer, she asked an acquaintance Vivek Wadhwa who had published previously for a referral of someone to help her. Wadhwa referred her to Salkever.

14.     Salkever is a professional writer who had collaborated with Mr. Wadhwa on four previous books and he came highly recommend to Plaintiff by Mr. Wadhwa as both experienced and trustworthy.

15.     In or about 2023, Salkever sent Gupta a written agreement (the "Agreement") for ghostwriting and editorial services, structured in four phases.

   a. Phase I ($25,000) – Gupta and Salkever would work together to create a theme for the book, build out elements of the theme, restructure the book's outline, and finalize a proposal that would generate interest to key audiences.

   b. Phase 2 ($50,000) – Salkever would work with Gupta to rewrite the book in Gupta's own voice. Salkever and Gupta would meet weekly to discuss the book and review progress. Gupta would provide Salkever with material for the book about Gupta's life and experience, with the goal for the book to be a "first-person account so as to ensure a consistent voice."

    c. Phase 3 ($15,000) – Salkever would work with the book's editor to revise the book as needed and also work with any third party fact-checkers to ensure the accuracy of the book.

    d. Phase 4 ($5,000) – Salkever would work with Gupta through the final stage of the publication and editing process including book art and images, book design, and blurbs. Salkever would also assist Gupta in writing bylined articles or book excerpts and advice on book marketing.

16. Based in part of Wadhwa's assertions that Salkever was experienced and trustworthy, Gupta agreed to the Agreement and the two of them began to work on the book together. First, Gupta drafted an Excel spreadsheet with the key incidents of her life. Then, over a period of 5-6 months, Gupta and Salkever met regularly. Gupta recounted her life experiences, which Salkever recorded and drafted into narrative form. Gupta reviewed and revised these drafts to ensure accuracy and voice consistency.

17. Gupta initially paid Salkever $80,000 for Phases 1 and 2.

18. After reviewing Salkever's draft, Gupta determined that it did not meet her expectations and elected not to proceed with Phases 3 and 4. Salkever then returned the additional $5000 that was an overpayment for Phases 1 and 2.

19. Gupta then substantially rewrote the manuscript herself, and worked with an editor resulting in adding and/or modifying majority of Salkever's prose.

20. In September 2025, Gupta published her autobiography, titled *The Woman in Deed: Road to IPO, Bridge Tables, and Beyond* ("the Published Book"), and it went up for sale on Amazon, Barnes & Noble and other major booksellers.

21. In October 2025, Gupta received an email from Salkever, contending that certain passages in the Published Book were similar to passages in Salkever's earlier manuscript and that the Published Book was infringing Salkever's copyright in his Manuscript. In the email, Salkever demanded that Gupta immediately remove the Published Book from sale unless Gupta paid Salkever additional money.

22. The contention that the Published Book infringed Salkever's copyright was false for the following reason:

    a. Because Gupta paid Salkever for Phases 1 and 2 pursuant to his proposal, Gupta obtained a non-exclusive license to use the material from the Manuscript in the Published Book. *Effects Associates, Inc. v. Cohen,* 908 F.2d 555 (9th Cir. 1990).

    b. The Published Book is not substantially similar to Salkever's draft;

    c. Any overlapping material consists of Gupta's own life story;

    d. Because Salkever and Gupta worked together the Manuscript constituted a joint work as they both intended their contributions to be merged into a single work. 17 U.S.C. § 101.

23. When Gupta refused to remove the Published Book from sale, Salkever sent takedown notices to Amazon and Barnes & Noble, falsely claiming that the Published Book infringed the copyright to the Manuscript which Gupta had already paid for and was a joint copyright work.

24. The takedowns were sent in bad faith and for an improper purpose: to coerce additional money from Gupta.

25. Gupta then hired an attorney, Jonathan Kirsch, to write to Salkever in an attempt to resolve the situation. In response, Salkever sent another letter, this time

demanding that Gupta pay him $350,000 if she wanted him to have the copyright takedown notices removed. Salkever's letter was clearly an attempt to extort money from Gupta. Even if Salkever was eligible for the maximum statutory damages for copyright infringement, the most he could possibly obtain at a trial would be $150,000. However, in this case, Salkever would not be entitled to any statutory damages because he did not register the copyright to the Manuscript until after the publication of the Published Book. And because Gupta had already paid Salkever the money required under the Agreement for his ghost writing services, there would be no actual monetary damages incurred by Salkever.

26. In October 2025, Salkever registered his draft of the book with the Copyright Office as *Vinita Gupta Autobiography Final Draft from Author* Reg. No. TXu-2-513-525, falsely claiming that he was the sole author of the text despite the fact that his manuscript was co-written with Gupta.

27. Because Gupta would not give in to Salkever's extortionist demands, Amazon, Barnes & Noble and other booksellers have pulled the book from sale and as of the filing of this Complaint, the Published Book is unavailable for sale.

FIRST CLAIM FOR RELIEF

(Declaratory Relief – Non-Infringement and Ownership)

28. Plaintiff re-alleges and incorporate by reference, as though set forth in full, paragraphs 1 through 27 above as though fully set forth herein.

29. Because of Salkever's actions and false claims of copyright infringement, the Published Book is no longer available for purchase and Amazon has notified Gupta that it will not list the book until the legal issue is settled.

30. Accordingly, Gupta seeks a declaration from the court that the Published Book does not violate the copyright in the Manuscript, that Gupta is either a joint author of the Manuscript, or in the alternative, has a license to use the material in the Manuscript without further pay, and that the Published Book may continue to be sold.

## SECOND CLAIM FOR RELIEF

(For Misrepresentation Under 17 U.S.C. § 512(f))

31. Plaintiff realleges and incorporates by reference, as though set forth in full, paragraphs 1 through 30 above as though fully set forth herein.

32. Defendant Salkever has made numerous invalid notices of copyright infringement falsely claiming that the Published Book violates the copyright in the Manuscript.

33. For the reasons asserted above, the Published Book does not, and cannot infringe the copyright in the Manuscript.

34. At the time that Salkever sent out the takedown notices, he was aware that the Published Book did not infringe any rights exclusively owned by him. On information and belief, Salkever did not act with reasonable care or diligence before sending the DMCA complaints.

35. Salkever was not acting in good faith when sending the DMCA complaints because he knew that he had been paid for the work and that the work would be considered a "joint work" under U.S. Copyright Law.

36. In light of the foregoing, Salkever violated 17 U.S.C. § 512(f) by knowingly and materially misrepresenting under that section that the Published Book infringed his copyright.

37. Salkever, by the deliberate filing of the bad-faith DMCA takedown requests, engaged in intentional tortious action.

38. As a direct and proximate result of Salkever's actions, Plaintiff has suffered substantial injury. Such injury includes, but is not limited to, the financial and personal expenses associated with responding to Salkever's complaints to Amazon and Barnes & Noble, the costs associated with retaining counsel to address the unlawful activities of Salkever, and the lost revenues (in an amount to be established at trial) that still continue to accrue because the Published Book has been kept from sale due to Salkever's improper and bad faith DMCA takedown complaints.

### THIRD CAUSE OF ACTION

(Intentional Interference with Prospective Economic Relations)

39. Gupta repeats, re-alleges and incorporates by reference in this paragraph the allegations set forth in Paragraphs 1 through 35, inclusive, and incorporates them by reference as though set forth fully herein.

40. Gupta was selling the Published Book, in print, audio and e-book format, throughout the United States, through various online booksellers, including, but not limited to, Amazon and Barnes & Noble.

41. Salkever knew of this economic relationship between Plaintiff and these booksellers and intended to disrupt it. Salkever engaged in wrongful conduct by, among other things, filing multiple fraudulent DMCA takedown notices.

42. Gupta's relationship with these booksellers with regard to the Published Book was disrupted when these booksellers removed the Published Book from sale. This deprived Gupta of the revenue that she could have earned through the

sale of the Published Book. Gupta was damaged as a result of the disruption of this relationship in an amount to be proven at trial. Salkever's wrongful conduct was a substantial factor in causing this harm to Plaintiff.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. For a declaration of the rights and obligations of Plaintiff and Defendant as it relates to ownership of the copyright in the Published Book.

2. For Salkever to be ordered to withdraw all copyright takedown and an injunction barring him from filing any further false DMCA notices.

2. For general damages in an amount to be proven at trial but which are a minimum of $75,000.

3. That Defendants be required to pay to Plaintiff her costs incurred in connection with the prosecution of this action; and

5. For such other and further relief as the Court deems appropriate.

DATED: January 22, 2026                LAW OFFICES OF LARRY ZERNER

                                       By: /s/Larry Zerner_____
                                           Larry Zerner
                                           Attorney for Plaintiff Vinita Gupta

## DEMAND FOR TRIAL BY JURY

Plaintiff Vinita Gupta pursuant to Rule 38 of the Federal Rules of Civil Procedure hereby demands trial by jury of all issues so triable in the present action.

DATED: January 22, 2026                LAW OFFICES OF LARRY ZERNER

                                By: __/s/Larry Zerner_____
                                    Larry Zerner
                                    Attorney for Plaintiff Vinita Gupta